UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABIGAIL RATCHFORD, *et al.*,

    *Plaintiffs*,

v.

CAFE DUPONT, LLC,

    *Defendant*.

No. 24-cv-2062 (DLF)

**MEMORANDUM OPINION**

Fourteen plaintiffs bring this action against Cafe Dupont, LLC ("Citron") for misappropriating their images in its advertising and promotional materials. Before the Court is the defendant's Partial Motion to Dismiss. Mot. to Dismiss, Dkt. 7. For the reasons that follow, the Court will grant it in part and deny it in part.

**I.    BACKGROUND**[1]

The plaintiffs—Abigail Ratchford, Sandra Valencia, Claudia Sampedro, Paola Cañas, Janet Guzman, Cielo Jean Gibson, Lina Posada, Tiffany Gray, Mariana Davalos, Irina Voronina, Amber Lancaster, Ursula Mayes, Amanda Cerny, and Stephanie Rao—are professional models who "earn[] [their] livelihood modeling and licensing" their images to different companies. Compl. ¶¶ 8–22, Dkt. 1. The plaintiffs have significant social media followings, ranging from a hundred thousand to several million. *Id.* ¶¶ 29–68.

In the ordinary process, the use of a model's images for commercial purposes requires negotiation through the model's agency for compensation based on the model's "reputation,

---

[1] For purposes of this motion to dismiss, the Court accepts as true all material factual allegations in the complaint. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

earning capacity, experience, and demand." Compl. ¶¶ 80–81.  The plaintiffs allege that Citron unlawfully bypassed this process by misappropriating and altering images from the plaintiffs' own social media pages "to make it appear that they worked at, endorsed[,] or were otherwise associated or affiliated with [Citron]." *Id.* ¶¶ 24, 28.  Collectively, the plaintiffs' images were used in roughly 100 Facebook or Instagram posts, with each post featuring an image of a plaintiff superimposed on a promotional poster for an upcoming Citron event.  *See* Compl. Exs. A–N; Dkts. 1-3 to 1-16.  The alleged misappropriation began in 2013 and continued until 2023.  *See* Ex. D, Dkt. 1-6; Ex. N, Dkt. 1-16.  Although Citron's social media pages are public, *see* Mot. to Dismiss at 9, over the span of the ten relevant years, its promotional posts consistently received relatively low engagement.  No post received more than twenty likes, and most received ten or fewer.  *See* Exs. A–N. The plaintiffs contend that they only became aware that Citron had been using their images "shortly" before they commenced this action.  *See* Opp'n at 5, Dkt. 9; Ex. A, Dkt. 1-3 (providing screenshots of the allegedly misappropriated images from July 2024).

On July 16, 2024, the plaintiffs filed suit against Citron alleging eight counts: common law right of publicity, false advertising, false association, negligence and respondeat superior, defamation, conversion, unjust enrichment, and quantum meruit.  Compl. ¶¶ 96–168.  Citron moves to dismiss the negligence, conversion, quantum meruit claims in their entirety, and the defamation claim as to all but one plaintiff.  Mot. to Dismiss at 6–10.

## II.  LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

When deciding a Rule 12(b)(6) motion, well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and

is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. DISCUSSION

### A. Count Four: Negligence and *Respondeat Superior*

Citron moves to dismiss the negligence and *respondeat superior* claim on the grounds that it did not owe the plaintiffs a duty of care. Mot. to Dismiss at 7. In the District of Columbia, to plead a negligence claim, a plaintiff must show that "that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 976 (D.C. 2023).

The complaint fails to provide any evidence showing that Citron owed the plaintiffs a duty of care. *See generally* Compl. Nor do the plaintiffs contest Citron's argument that it owed the plaintiffs no such duty. *See generally* Opp'n. Both omissions are fatal to the plaintiffs' claim. *See Freyberg*, 204 A.3d at 976; *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). Accordingly, the Court will dismiss the plaintiffs' negligence and *respondeat superior* claim alleged in Count Four.

### B. Count Five: Defamation

Next, Citron moves to dismiss the defamation claim under Count Five as time-barred. "The statute of limitations for a defamation claim in the District of Columbia is one year." *Mullin v. Wash. Free Wkly., Inc.*, 785 A.2d 296, 298 (D.C. 2001) (citing D.C. Code § 12–301(4) (2001)). The clock "begins to run when the plaintiff discovers or reasonably should have discovered the facts necessary to assert that claim." *Bayatfshar v. ARINC, Inc.*, 961 F. Supp. 2d 206, 215 (D.D.C.

4

2013). In general, "a [defamation] claim accrues only if a plaintiff has actual or inquiry notice" of the injury, regardless of when it occurred. *Crespo v. 1215 CT LLC*, No. 22-cv-03801 (TNM), 2023 WL 11704907, at *1 (D.D.C. May 2, 2023); *see Bradley v. Nat'l Ass'n of Sec. Dealers Disp. Resol., Inc.*, 433 F.3d 846, 849 (D.C. Cir. 2005) (describing how the discovery rule applies where "the relationship between the injury and the alleged tortious conduct is obscure"). The general discovery rule does not apply, however, "when the alleged defamatory statements are 'published by a mass media defendant,'" because "the fact of the injury is readily ascertainable upon publication." *McFadden v. WMATA*, 949 F. Supp. 2d 214, 221 (D.D.C. 2013) (quoting *Oparaugo v. Watts*, 884 A.2d 63, 72 (D.C. 2005)). A defendant may be a "mass media defendant" if it publishes a "book, magazine, or newspaper . . . [that is] generally available to the public." *Mullin*, 785 A.2d at 296, 298 n.2, 299.

Citron, a single nightclub in northwest D.C., *see* Compl. ¶¶ 6, 72, is dissimilar to those entities that courts have found to be mass media outlets, *see, e.g., Stovell v. James*, 965 F. Supp. 2d 97, 102 (D.D.C. 2013) (finding Sports Illustrated Magazine to be a mass media outlet); *Mullin*, 785 A.2d at 298–300 (same for a city newspaper publication). But Citron is not an entity that publishes books, magazines, or newspapers that "generally available to the public." *Maupin v. Haylock*, 931 A.2d 1039, 1042 (D.C. 2007) (citation modified). And although its website and social media accounts "are public and open to consumption by anyone who can access them," Mot. to Dismiss at 9, the social media posts at issue received very little online engagement. Ex. A at 2, 3; Ex. B at 4–5, 7 (showing that Citron's most successful post garnered only sixteen likes; several posts had no likes at all; and at least one post was seen by just eleven people). Posts by a single nightclub, with limited circulation, in a locale where most of the plaintiffs have little to no connection, and which do not mention any plaintiff by name, are plainly "difficult to discover,"

5

*Crespo,* 2023 WL 11704907, at *1, and "obscure," *Bradley*, 433 F.3d at 849. On these alleged facts, Citron is not a mass media outlet, and the more lenient discovery rule applies.

As a result, the plaintiffs' defamation claim began to accrue when the plaintiffs "discovered or reasonably should have discovered the facts necessary to assert that claim." *Bayatfshar*, 961 F. Supp. 2d at 215. The complaint includes screenshots of the misappropriated images taken in June 2024, just one month before the plaintiffs filed this lawsuit. Granting the plaintiffs the benefit of all inferences that can be derived from their allegations, *Hettinga*, 677 F.3d at 476, the Court must assume that the plaintiffs only recently became aware of the alleged defamatory posts, *see Crespo,* 2023 WL 11704907, at *1 (denying a motion to dismiss defamation claims as time-barred in part because the plaintiffs' screenshots were taken shortly before filing suit). "Because statute of limitations issues often depend on contested questions of fact, courts hesitate to dismiss claims as untimely at the pleading stage." *Id.* (citation modified); *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("[C]ourts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint."). At least at this stage, the plaintiffs have alleged "enough to persuade the Court that they only recently had inquiry notice of the [defendant's] posts." *Crespo,* 2023 WL 11704907, at *1. Accordingly, the Court will deny the defendant's motion to dismiss the defamation claim in Count Five.

    **C.**    **Count Six: Conversion**

"To state a claim for conversion under District of Columbia law, a plaintiff must allege '(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto.'" *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 196 (D.D.C. 2017) (quoting *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015)). "This requires the defendant to do

something that 'seriously interferes' with the plaintiff's right to control the property in question." *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 340 (D.D.C. 2011) (quoting *Blanken v. Harris, Upham & Co., Inc.*, 359 A.2d 281, 283 (D.C. 1976)).

Under D.C. law, it is an open issue whether the tort of conversion applies to intangible property. *See Gray v. Harco, Inc.*, No. 22-cv-1393 (TSC), 2024 WL 3026537, at *9 (D.D.C. June 17, 2024). But even assuming that a claim of conversion applies here, the plaintiffs do not plausibly allege that the defendant has "seriously interfered" with their ability to control their images. *Blanken*, 359 A.2d at 283. The complaint "alleges only that [the defendant] copied the [p]laintiffs' images, not that they prevented [p]laintiffs from using their images at any point or for any purpose." *Gray*, 2024 WL 3026537, at *9 (citation modified); *see* Compl. ¶¶ 82–83. The plaintiffs "retain[] the originals" so "mere copying" does not seriously interfere with their rights. *Gaubatz*, 793 F. Supp. 2d at 340; *see Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001). Even accepting that the defendant "forced each Plaintiff's association" with Citron and denied their "ability and opportunity to say 'no'" to their images being used, Opp'n at 7, Citron's use of the images did not prevent the plaintiffs "from using their images at any point or for any purpose," *Gray*, 2024 WL 3026537, at *9. Because the complaint fails to state a claim for conversion, the Court will grant the motion to dismiss Count Six.

   **D. Count Eight: Quantum Meruit**

Courts in the District of Columbia use the term "quantum meruit" to describe two forms of contract claims: (1) implied-in-fact contractual claims and (2) quasi-contractual claims. *U.S. ex rel. Mod. Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246 (D.C. Cir. 1996). Under the implied-in-fact contract theory, a plaintiff must show that "(1) valuable services [were] rendered by the plaintiff; (2) for the person sought to be charged; (3) which services were accepted by the person

7

sought to be charged, and enjoyed by him or her; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, expected to be paid." *Brown v. Brown*, 524 A.2d 1184, 1190 (D.C. 1987) (citation modified).  An implied-in-fact claim is available only to plaintiffs who show that "a contract [can be] inferred from the conduct of the parties." *U.S. ex rel. Mod. Elec.*, 81 F.3d at 246.  In contrast, a quasi-contractual meruit claim "is based on the principle of unjust enrichment and not on a contract," *TVL Assocs. v. A & M Const. Corp.*, 474 A.2d 156, 159 (D.C. 1984), and is "more commonly known as a theory of unjust enrichment," *Vereen v. Clayborne*, 623 A.2d 1190, 1194 (D.C. 1993).

   The plaintiffs fail to allege a claim under the implied-in-fact theory because no "contract [can be] inferred from the conduct of the parties." *U.S. ex rel. Mod. Elec.*, 81 F.3d at 246.  The plaintiffs consistently emphasize that each one of them "has never been employed at Citron, has never been hired to endorse Citron, has never been otherwise associated or affiliated with Citron." *See e.g.*, Compl. ¶ 31.  The lack of contractual arrangement is fatal to any implied-in-fact contract claim.  *U.S. ex rel. Mod. Elec.*, 81 F.3d at 246.  To the extent that the plaintiffs allege an unjust enrichment claim, it is duplicative of the claim alleged in Count Seven.  *See* Compl. ¶¶ 156–63.  The plaintiffs may continue to pursue their unjust enrichment theory under Count Seven alone.  Accordingly, the Court will grant the motion to dismiss Count Eight.

8

## CONCLUSION

For these reasons, the Court grants in part and deny in part the defendant's Partial Motion to Dismiss, Dkt. 7. Counts Four, Six, and Eight are dismissed without prejudice. A separate order consistent with this decision accompanies this memorandum opinion.

August 14, 2025

_____
DABNEY L. FRIEDRICH
United States District Judge